UNITED STATES DISTRICT COURT
FOR THE DISRICT OF SOUTH CAROLINA

FEDERAL TRADE COMMISSION,
      Petitioner,

            v.

DAVID WERRELL,
      Respondent.

Misc. No.  9:23-mc-00700-DCN

**MEMORANDUM IN SUPPORT OF THE FEDERAL TRADE
COMMISSION'S PETITION FOR AN ORDER TO SHOW CAUSE AND
<u>FOR SUMMARY ENFORCEMENT OF CIVIL INVESTIGATIVE DEMAND</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iii

I.    INTRODUCTION ............................................................................................................ 1

II.   JURISDICTION AND VENUE ....................................................................................... 2

III.  BACKGROUND .............................................................................................................. 3

   A.   Respondent Was Duly Served with a CID Issued in the Commission's Investigation of CLF's Acts and Practices. ......................................................................................... 3

   B.   Respondent Refused to Comply with the CID Following CLF's Filing of an Independent Challenge to the Commission's Authority. ......................................... 5

IV.   THE LEGAL STANDARD FOR ENFORCEMENT........................................................ 7

V.    ARGUMENT .................................................................................................................... 8

   A.   Respondent's CID Falls Squarely Within the Agency's Statutory Authority to Investigate CLF. ....................................................................................................... 8

   B.   Respondent's CID was Properly Issued and Duly Served in Satisfaction of the Statutory Requirements of Due Process. ............................................................... 11

   C.   The Testimony and Documents Requested Are Reasonably Relevant and Material to the Investigation. ...................................................................................................... 13

   D.   The CID is Not Unreasonably Broad or Burdensome................................................. 14

   E.   Respondent Waived Any Challenges to the CID by Failing to Avail Himself of Administrative Remedies. ..................................................................................... 15

   F.   The CLF Declaratory Action Should Not Delay Enforcement of Respondent's CID. ............. 17

VI.   CONCLUSION ............................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Alphin v. United States*, 809 F.2d 236 (4th Cir. 1987).................................................... 9

*American Motors Corp. v. FTC*, 601 F.2d 1329 (6th Cir. 1979).................................... 18

*Bell Atlantic Cash Balance Plan v. U.S. E.E.O.C.,* 976 F.Supp. 376 (E.D.Va. 1997) ................ 20

*Clear Sky Car Wash, LLC v. City of Chesapeake*, 910 F. Supp. 2d 861 (E.D. Va. 2012)............ 19

*Community Blood Bank of the Kansas City Area, Inc. v. FTC,* 405 F.2d 1011 (8th Cir. 1969)... 12

*E.E.O.C. v. Cuzzens of Georgia, Inc.*, 608 F.2d 1062 (5th Cir. 1979)........................................ 18

*EEOC v. American Target Advertising, Inc.,* 257 F.3d 348 (4th Cir. 2001) .................................. 1

*EEOC v. City of Norfolk Police Dep't*, 45 F.3d 80 (4th Cir.1995).......................................... 8, 13

*EEOC v. Fed. Exp. Corp.*, 558 F.3d 842 (9th Cir.2009)............................................................. 8

*EEOC v. Lockheed Martin Corp., Aero & Naval Systems*, 116 F.3d 110 (4th Cir. 1997) ..... 15, 16

*EEOC v. Maryland Cup Corp.*, 785 F.2d 471 (4th Cir. 1986).............................................. 8, 9, 17

*EEOC v. Randstad*, 685 F.3d 433 (2012) .................................................................... 8, 13, 15, 16

*Fed. Mar. Comm'n v. Port of Seattle*, 521 F.2d 431 (9th Cir. 1975)........................................ 12

*FTC v. AmeriDebt, Inc.* 343 F. Supp. 2d 451 (D. Md. 2004) ...................................................... 12

*FTC v. Associated Community Services, Inc.*, No. 2:21-cv-10174 (E.D. Mich. 2021) ............... 11

*FTC v. Dresser Industries, Inc.*, Misc. No. 77-44, 1977 U.S. Dist. LEXIS 16178 (D.D.C. Apr. 26, 1977).................................................................................................................................... 1

*FTC v. Help the Vets, Inc.*, No. 6:18-cv-01153 (M.D. Fla. 2018) ................................................ 12

*FTC v. Invention Submission Corp.*, 965 F.2d 1086 (D.C. Cir. 1992) .................................... 3, 16

*FTC v. Texaco*, Inc., 555 F.2d 862 (D.C.Cir. 1977) ................................................................ 9, 17

*FTC v. XCast Labs, Inc.*, No. Misc 21-1026-MWFMRWX, 2021 WL 6297885 (C.D. Cal. 2021) ................................................................................................................................. 18

*In re EEOC*, 709 F.2d 392 (5th Cir. 1983) ................................................................... 9

*Integrity Advance, LLC v. Consumer Fin. Prot. Bureau,* 48 F.4th 1161 (10th Cir. 2022) ............ 1

*Kinzli v. City of Santa Cruz*, 818 F.2d 1449 (9th Cir. 1987) ....................................... 19

*McKart v. United States*, 395 U.S. 185 (1969) ........................................................... 18

*Reisman v. Caplin*, 375 U.S. 440 (1964) ................................................................... 21

*Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Board*, 878 F.2d 875 (5th Cir. 1989) 15

*SEC v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047 (2d Cir. 1973) ................................. 17

*Shea v. Office of Thrift Supervision*, 934 F.2d 41 (3d Cir. 1991) ................................. 20

*Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221 (4th Cir. 2011) ........................... 8

*Stryker Corp. v. DOJ*, No. 08-4111 (WJM), 2009 WL 424323 (D.N.J. 2009) ....................... 21

*Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d 231 (3d Cir. 1980) ................................................................................................................................. 19

*United States v. Amer. Target Advertising, Inc.*, 257 F.3d 348 (4th Cir. 2001) ........................... 3

*United States v. Dynavac, Inc.*, 6 F.3d 1407 (9th Cir. 1993) .......................................... 9

*United States v. Markwood*, 48 F.3d 969 (6th Cir. 1995) .................................... 1, 3, 9

*United States v. Morton Salt*, 338 U.S. at 642 (1950) .......................................... 11, 18

*United States v. Powell*, 379 U.S. 48 (1964) ............................................................... 17

*Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609 (1973) ................................. 12

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) ................................................................................................................................. 19

*XYZ Law Firm v. FTC*, 525 F. Supp. 1235 (N.D. Ga. 1981) ....................................... 13

**Statutes**

15 U.S.C. § 44 .................................................................................................... 10, 12

15 U.S.C. § 45(a) ................................................................................................ 1, 4, 10

15 U.S.C. § 57b-1(e) ........................................................................................... passim

15 U.S.C.§ 6105 .................................................................................................. 10

**Other Authorities**

16 C.F.R. § 2.10 ................................................................................................. 6, 13, 17

16 C.F.R. § 2.7 ................................................................................................... 12, 13

16 C.F.R. Part 310 ............................................................................................. 1, 4, 9, 10

# I.    INTRODUCTION

The Federal Trade Commission ("FTC" or "Commission") petitions for summary enforcement of a civil investigative demand ("CID")[1] issued to David Werrell ("Respondent"). Respondent refuses to comply with the Commission's CID absent a court's directive to do so, to the delay and detriment of an ongoing law enforcement investigation.

Respondent is a member of the board of directors of Childhood Leukemia Foundation, Inc. ("CLF"). The Commission is investigating to determine whether CLF is engaged in deceptive charitable solicitations in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), and/or violated the Commission's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310. The CIDs seek oral testimony and a production of documents from Respondent. Pet. Exh. 2. Respondent did not petition to quash or limit the CID, or even assert any objections thereto. Rather, Respondent's Counsel scheduled his testimony and facilitated a small document production (thus-far uncertified). Pet. Exh. 1, ¶¶ 10-11, 22-23. However, just days before the mutually-agreed date for his testimony, Respondent's Counsel advised that Respondent refused to appear pending the resolution of a lawsuit filed by CLF seeking to halt the FTC's investigation.[2] Pet. Exh. 4 at 1. Respondent is not a party to the lawsuit.

---

[1] "CIDs work like civil subpoenas, and executive-branch departments or agencies commonly issue them in their investigations." *Integrity Advance, LLC v. Consumer Fin. Prot. Bureau,* 48 F.4th 1161, 1165 n.2 (10th Cir. 2022). By statute, the Commission enforces CIDs by means of a summary proceeding for an *ex parte* show cause order, for which no discovery is implicated. *See* 15 U.S.C. § 57b-1(e); *EEOC v. American Target Advertising, Inc.,* 257 F.3d 348, 351 (4th Cir. 2001) ("designed to be summary in nature")(citation and quotations omitted); *United States v. Markwood,* 48 F.3d 969, 980-81 (6th Cir. 1995); *FTC v. Dresser Industries, Inc.,* Misc. No. 77-44, 1977 U.S. Dist. LEXIS 16178 (D.D.C. Apr. 26, 1977).

[2] *See Childhood Leukemia Fdn., Inc. v. Fed. Trade Comm'n, et al.,* No. 3:23-cv-03034 (D.N.J., filed June 2, 2023) ("CLF Declaratory Action").

As set forth herein, the Commission's investigation is authorized by statute, the Commission has satisfied the statutory requirements of due process, the CID seeks relevant and material information, and the CID is not unduly burdensome. CLF's pending litigation—to which Respondent is not a party—is no basis for Respondent to evade compliance with a duly-issued and duly-served Commission CID. Delay of Respondent's testimony will only result in fading recollections of relevant information and the possibility he may become unavailable to testify. The Commission therefore respectfully requests that this Court require Respondent to show cause why he should not be compelled to comply with the CID.

## II.     JURISDICTION AND VENUE

Section 20 of the FTC Act authorizes the FTC to issue a CID to any person who may have documents or information relevant to an investigation of potential unfair or deceptive acts or practices. 15 U.S.C. § 57b-1(c)(1). The FTC may issue a CID to require a person to produce documents, respond to written questions, or give oral testimony under oath (referred to as an "Investigational Hearing"). *Id*. § 57b-1(c)(3)–(6). CID recipients are required to provide a sworn certification that their answers to interrogatories and responses to document production requests are complete. 15 U.S.C. § 57b-1(c)(11), (13).

On March 24, 2023, the FTC issued a CID to Respondent, among other employees and board members of CLF, to investigate potential deceptive acts or practices in connection with CLF's solicitation of charitable donations. *See* Pet. Exh. 2. Respondent, who was duly served, did not file a petition to quash or limit his CID; rather, he scheduled the requested Investigational Hearings on a mutually-agreed date through counsel and provided a modest document production. *See* Pet. Exhs. 1, ¶¶ 10-11, 22-23; 3 at 3-7. Just days before his Hearing, however,

Respondent unilaterally refused to appear and, to date, has not appeared for testimony. Pet. Exhs. 1, ¶¶ 24-25; 4 at 1. To date, Respondent has also failed to provide his sworn certification of his document production, despite FTC staff's requests. Pet. Exhs. 1, ¶ 28.

If the CID recipient does not comply, the FTC may initiate enforcement proceedings in the district court where the recipient resides, is found, or transacts business. *Id*. § 57b-1(e), (h). These summary proceedings take the form of a petition and *ex parte* order to show cause (rather than a complaint and summons), and are adjudicated without discovery absent "extraordinary circumstances." *United States v. Amer. Target Advertising, Inc*., 257 F.3d 348, 355 (4th Cir. 2001); *United States v. Markwood*, 48 F.3d 969, 980-82 (6th Cir. 1995); *FTC v. Invention Submission Corp*., 965 F.2d 1086, 1091 (D.C. Cir. 1992).

Because Respondent resides in this district, *see* Pet. Exh. 1, ¶ 7, jurisdiction and venue for this action are properly laid in this Court.

### III.     BACKGROUND

**A.     Respondent Was Duly Served with a CID Issued in the Commission's Investigation of CLF's Acts and Practices.**

Respondent is a longtime board member of CLF, which is headquartered in Brick, New Jersey. Pet. Exh. A, ¶ 7. The Commission is engaged in an ongoing investigation of CLF's acts and practices, including whether CLF violated Section 5 of the FTC Act, 15 U.S.C. § 45(a), and/or violated the TSR, 16 C.F.R. Part 310, relating to the solicitation of charitable donations. *Id.* ¶ 4; Pet. Exh. 2 at 6. The investigation seeks information regarding CLF's representations to potential donors regarding its programs and services, including those made by professional fundraisers hired by CLF. The investigation also seeks information relating to whether CLF

operates as a legitimate charity primarily focused on advancing its stated charitable mission, or if it in fact operates for its own profit or that of its members; this inquiry relates to whether CLF meets the definition of a "corporation" subject to the Commission's enforcement authority under the FTC Act.

Respondent has served as a member of CLF's board of trustees since at least 2013, and his CID seeks testimony regarding CLF's corporate governance and the board's role in CLF's operations. Pet. Exhs. 1, ¶ 7; 2 at 6. The CID also seeks production of documents related to Respondent's board activities and communications. *Id.* The CID was issued to Respondent on March 24, 2023, and was thereafter served by certified mail, return receipt requested, and delivered by process server between April 4 and April 20, 2023. Pet. Exh. 1, ¶ 8. A courtesy copy was also provided to CLF's Counsel, who thereafter communicated that they would also represent Respondent. *Id.* ¶¶ 8-9. Respondent's CID set a date of May 3, 2023 for Respondent's testimony, but specified that the testimony could take place on "such other date and time as are agreed to in consultation with Commission Counsel." Pet. Exh. 2 at 3. Respondent's CID directed him to provide documents and a Certification of Compliance with the CID on April 24, 2023. *Id.* at 3, 5.

On April 19, 2023, Commission staff and Respondent's Counsel participated in a meet-and-confer relating to Respondent's CID, as well as CIDs to CLF and to other CLF board members and employees. Pet. Exh. 1, ¶ 9. At this meet-and-confer, Respondent's Counsel did not raise or otherwise discuss any objections to Respondent's CID, nor did Counsel schedule any later meet-and-confer sessions regarding the CID. *Id.* ¶¶ 9, 13. Respondent's Counsel subsequently provided dates of availability for testimony by email and sought an extension of

time for Respondent to produce documents. Pet. Exhs. 1, ¶¶ 10-11; 2 at 3-7. Commission staff

arranged for an extension to May 12, 2023, for the production of documents, and agreed to a

Hearing date of June 13, 2023. Pet. Exh. 3 at 3-4.

On May 12, 2023, in response to five document requests, Respondent produced to the

Commission a single 106-page .pdf document, unaccompanied by a certification.[3] Pet. Exhs. 1, ¶

22; 2 at 6-7. On May 30, 2023, Commission staff wrote to request that the production be certified

on or before June 7, 2023. Pet. Exh. 5.

Respondent did not file a petition to quash his CID as permitted by 15 U.S.C. § 57b-1(f),

or seek any extension of time to do so under the applicable Commission regulation, 16 C.F.R. §

2.10. Pet. Exh. 1, ¶¶ 12, 26. Nor did Respondent submit any written objections to Commission

staff. *Id*. ¶ 27.

**B.    Respondent Refused to Comply with the CID Following CLF's Filing of an
Independent Challenge to the Commission's Authority.**

Prior to issuing the CID to Respondent, the Commission issued a CID to CLF for

documents and interrogatory responses. CLF petitioned to quash the CID on September 9, 2022,

arguing that, as a non-profit corporation, it was beyond FTC's investigative and enforcement

authority. The Commission denied the petition on October 19, 2022. Pet. Exh. 1, ¶ 15; *see also*

Commission Order Denying Petition to Quash Civil Investigative Demand, entered Oct. 19, 2023

---

[3] Although the single file produced by Respondent appears to consist of multiple individual
documents, Respondent did not specify which document request(s) the file (or any segments
thereof) are responsive to. Pet. Exh. A, ¶ 22. Commission staff cannot fully assess Respondent's
compliance with the CID's document requests absent certification of his responses.

(*available at*

https://www.ftc.gov/system/files/ftc_gov/pdf/2223073childhoodleukemiafdnorderdenyingptq.pdf

) ("Order Denying CLF Petition"). Following this denial, CLF produced documents and written interrogatory responses to Commission staff in partial compliance with that CID. Pet. Exh. 1, ¶ 16.

On June 2, 2023, CLF filed the CLF Declaratory Action against the Commission and the three sitting Commissioners in the District of New Jersey, seeking, *inter alia*, declaratory relief that the FTC's "investigation of Childhood Leukemia Foundation is unlawful and unauthorized by Congress" and "that the CID issued to Childhood Leukemia Foundation is unlawful and unauthorized by Congress," and "injunctive relief setting aside as void the unlawful investigation and/or CID of" CLF. CLF Declaratory Action, Dkt. No 1, at 15; Pet. Exh. 1 ¶¶ 18-19. Respondent is not a party to that lawsuit, nor is Respondent's CID referred to in the suit. *Id*. The government plans to file a motion to dismiss the CLF Declaratory Action for lack of subject-matter jurisdiction and failure to state a claim.[4] The motion to dismiss will not be fully briefed until mid-November 2023. Pet. Exh. 1, ¶ 21.

Following the filing of the CLF Declaratory Action, Respondent ceased all efforts to comply with his CID. On June 9, 2023, Respondent's Counsel emailed Commission staff to inform them that Respondent refused to appear for his Investigational Hearing while the CLF

---

[4] CLF Declaratory Action, Dkt. No. 24 (filed August 8, 2023) (pre-motion letter to the court summarizing arguments to be included in forthcoming motion to dismiss ("Pre-Motion Letter")).

Page 6

Declaratory Action was pending. Pet. Exh. 4 at 1. Commission staff informed Respondent's

Counsel that his unilateral refusal to appear on the agreed date constituted noncompliance. *Id*.

As of this filing, Respondent has not appeared to give testimony. Pet. Exh. 1, ¶ 25. As of

this filing, Respondent has not submitted a Certification of Compliance, nor has Respondent's

Counsel acknowledged any request that he do so. *Id.* ¶ 30.

## IV. THE LEGAL STANDARD FOR ENFORCEMENT

A court's function in a CID enforcement proceeding is "sharply limited." *EEOC v.

Randstad*, 685 F.3d 433, 442 (2012) (quoting *EEOC v. City of Norfolk Police Dep't*, 45 F.3d 80,

82 (4th Cir.1995)); *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 226 (4th Cir.

2011). Courts will enforce administrative process where the agency subpoena/CID (i) "is within

the agency's authority," (2) "the agency has satisfied statutory requirements of due process," (3)

"the information sought is relevant and material to the investigation," and (4) there has been no

showing that "that the subpoena is unduly burdensome." *EEOC v. Maryland Cup Corp.*, 785

F.2d 471, 475-76 (4th Cir. 1986); *EEOC v. Randstad*, 685 F.3d 433, 442 (4th Cir. 2012) ( "As

long as jurisdiction is 'plausible' and not 'plainly lacking,'" the agency's process "should be

enforced, unless the party being investigated demonstrates that the subpoena is unduly

burdensome") (citing *EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 848 (9th Cir.2009), *EEOC v.

Maryland Cup Corp.*, 785 F.2d 471, 476 (4th Cir.1986)).

Enforcement proceedings necessarily must be accelerated and limited in scope to protect

"'the important governmental interest in the expeditious investigation of possible unlawful

activity.'" *United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995) (quoting *FTC v. Texaco,

Inc.*, 555 F.2d 862, 872-73 (D.C.Cir. 1977)). To ensure the summary nature of enforcement

proceedings, the government is authorized to rely on affidavits or declarations to demonstrate

that the requirements for enforcement of an administrative subpoena have been satisfied. *Alphin*

*v. United States*, 809 F.2d 236, 238 (4th Cir. 1987); *accord In re EEOC*, 709 F.2d 392, 400 (5th

Cir. 1983); *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir. 1993) (the government's

burden is a "slight one," and may be satisfied by a declaration).

## V.    ARGUMENT

The FTC satisfies the three conditions for enforcement of Respondent's CID: the CID is

within the statutory authority of the agency; the FTC has satisfied the statutory requirements of

due process; the CID seeks documents and testimony that are relevant and material to the FTC's

investigation; and, the CID's demands are not unreasonably broad or burdensome. *Maryland*

*Cup Corp.*, 785 F.2d at 475-76. Accordingly, the CID should be enforced without delay.

### A.    Respondent's CID Falls Squarely Within the Agency's Statutory Authority to Investigate CLF.

The FTC's investigation centers on whether CLF is engaged in violations of law with

respect to its—and its fundraisers'—solicitation of charitable donations on CLF's behalf. The

violations being investigated are potential violations of the FTC Act, which the Commission was

created to enforce, and the TSR, which the Commission is statutorily empowered to enforce. The

investigation falls squarely within the FTC's statutory authority.

The FTC enforces Section 5(a) of the FTC Act, which prohibits "persons, partnerships, or

corporations" from engaging in unfair or deceptive acts or practices in or affecting commerce. 15

U.S.C. § 45(a)(2). The FTC Act defines "corporation" to include "any company . . . without

shares of capital or capital stock or certificates of interest . . . which is organized to carry on

business for its own profit or that of its members." *Id*. § 44. The FTC also enforces rules promulgated by the agency under the Telemarketing and Consumer Fraud and Abuse Prevention Act. 15 U.S.C.§ 6105. Among other things, these rules (specifically, the TSR) prohibit telemarketers from misrepresenting the purpose for which any charitable contribution will be used, 16 C.F.R. § 310.3(d)(3), and prohibit the delivery of prerecorded messages soliciting contributions from consumers who have not previously donated, *id.* § 310.4(b)(1)(v).

For the FTC to determine if violations of laws it enforces have occurred, the FTC Act authorizes the agency to issue CIDs to any person—defined to include any "natural person" or "legal entity"—who may have documents or information relevant to potential violations. 15 U.S.C. § 57b-1(a), (c). The FTC "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt*, 338 U.S. at 642–43 (1950).

Here, CLF solicits the public for charitable donations and makes specific representations regarding the charitable purposes toward which those donations will go, yet "it appears from forms filed with the IRS that more than 90% of CLF's fundraising revenue was spent on fundraising and employee compensation" between 2019 and 2021 while "[c]omparatively little was spent on CLF's programs." Order Denying CLF Petition, at 2. Additionally, CLF's paid fundraisers make the same potentially deceptive claims regarding CLF's programs and may be engaging in unlawful calls that deliver prerecorded messages. *Id.* An investigation into whether and how much of the money CLF solicits from consumers actually goes towards CLF's claimed charitable purposes—and whether CLF is assisting and facilitating deceptive misrepresentations

and illegal robocalls by its paid fundraisers[5]—falls comfortably within the Commission's investigatory and enforcement authority. Indeed, the FTC has brought numerous enforcement actions to stop deceptive charitable fundraising schemes. *See*, *e.g.*, *FTC v. Associated Community Services, Inc.*, No. 2:21-cv-10174 (E.D. Mich. 2021) (*Complaint available at* https://www.ftc.gov/system/files/documents/cases/1_-_complaint_2.pdf); *FTC v. Help the Vets, Inc.*, No. 6:18-cv-01153 (M.D. Fla. 2018) (*Complaint available at* https://www.ftc.gov/system/files/documents/cases/help_the_vets_complaint.pdf).

Moreover, the FTC is authorized to issue CIDs to obtain information so the agency can determine for itself whether CLF is a "corporation" within the meaning of Section 4 of the FTC Act and thus subject to the FTC's law enforcement authority.[6] As the Supreme Court has explained, an agency's "jurisdiction to determine whether it has jurisdiction is as essential to its effective operation as is a court's like power." *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 627 (1973); *see Fed. Mar. Comm'n v. Port of Seattle*, 521 F.2d 431, 434 (9th Cir. 1975) ("[E]ach independent regulatory administrative agency has the power to obtain the facts requisite to determining whether it has jurisdiction over the matter sought to be investigated."),

---

[5] *See* 16 C.F.R. § 310.3(b) (setting forth liability for "assisting and facilitating" telemarketing violations).
[6] Regardless of its nominal incorporation as a not-for-profit entity or its tax exempt status, an organization is a "corporation" within the ambit of the FTC Act if is shown to be "organized to carry on business for its own profit or that of its members." 15 U.S.C. § 44; *see FTC v. AmeriDebt, Inc.* 343 F. Supp. 2d 451, 460 (D. Md. 2004) (finding that a company's incorporation as a non-stock corporation with tax exempt status was "insufficient to insulate it from the regulatory coverage of the FTC Act."); *Community Blood Bank of the Kansas City Area, Inc. v. FTC,* 405 F.2d 1011, 1019 (8th Cir. 1969) ("mere form of incorporation does not put [defendants] outside the jurisdiction of the Commission").

*XYZ Law Firm v. FTC*, 525 F. Supp. 1235, 1238 (N.D. Ga. 1981) (rejecting challenge to FTC

investigation by entity that disputed it was a "debt collector" subject to FTC enforcement,

finding "the FTC here has jurisdiction to investigate to determine its own jurisdiction");

*Randstad*, 685 F.3d at 442 ("To establish its authority to investigate, [an agency] need only

present an 'arguable' basis for jurisdiction") (quoting *City of Norfolk Police Dep't*, 45 F.3d at

85).

 Here, the CID in part seeks information regarding CLF's operations and expenditures that

will enable the Commission to determine whether CLF is functionally operating as a for-profit

"corporation" within the meaning of the FTC Act. The CID, therefore, is comfortably within the

FTC's investigatory authority, even if the FTC should ultimately determine that CLF is not a

"corporation" subject to its enforcement authority.

**B. Respondent's CID was Properly Issued and Duly Served in Satisfaction of the Statutory Requirements of Due Process.**

 Respondent did not dispute the FTC's authority or process for issuing and serving the

CID, including by filing a petition to quash or limit. Pet. Exh. 1, ¶ 26. Such a challenge would

have been meritless, as the CID was issued and served in compliance with applicable procedural

requirements of the FTC Act and its implementing rules. 15 U.S.C. § 57b-1(c); 16 C.F.R. § 2.7

(2023).

 Specifically, a CID for testimony and/or documents must:

- identify the nature of the conduct being investigated and the provision of law
  applicable to such violation;

- describe with "definiteness and certainty" the documentary material to be produced;

- provide the respondent a "reasonable period of time" to respond to the requests;

- prescribe the date, time, and place for the testimony;

- identify the Commission investigator who will conduct the Investigational Hearing; and

- identify the custodian to whom documentary material shall be made available or a transcript shall be submitted.

15 U.S.C. § 57b-1(c)(1)-(6).

Respondent's CID satisfies all of these requirements. *See* Pet. Exh. 2. The CID states the nature of the FTC's investigation and the law at issue, *id.* at 6 (identifying the "Subject of Investigation"), and describes with "definiteness and certainty" the kinds of documents to be produced, 15 U.S.C. § 57b-1(c)(3)(a), (5)(a). The CID states a date, time, and place for the taking of Respondent's oral testimony, and a date certain for him to produce documents. Pet. Exh. 2 at 3. The CID identifies a specific records custodian for the submission of transcripts and production of documents and a specific Commission investigator to receive the testimony. *Id.* The CID was validly signed by Commissioner Alvaro Bedoya acting pursuant to a Resolution by the full Commission authorizing the use of compulsory process. *Id.*; 16 C.F.R. § 2.7(a). The CID was served on Respondent by "depositing a duly executed copy in the United States mails by registered or certified mail, return receipt requested, duly addressed to such person at his residence or principal office or place of business," in addition to being delivered by process

server and by emailed courtesy copies to CLF's Counsel. 15 U.S.C. § 57b-1(c)(9)(B); Pet. Exh. 1, ¶ 8.

The Commission also provided Respondent with ample opportunity to challenge or request modification of the CID in accordance with statutory due process: a mechanism was available for Respondent to petition to limit or quash the CID, *see* 16 C.F.R. § 2.10, which Respondent simply did not avail himself of, and Respondent's sole request for modification—an extension of time to produce documents—was accommodated by FTC staff through the applicable rule, *see* 16 C.F.R. § 2.7(l). The FTC has met the requirements of statutory due process with respect to Respondent's CID.

**C.    The Testimony and Documents Requested Are Reasonably Relevant and Material to the Investigation.**

The information sought pursuant to the CID is reasonably relevant to the FTC's investigation. *Randstad*, 685 F.3d at 448 (4th Cir. 2012) ("[W]e determine relevancy in terms of the investigation") (citing *EEOC v. Lockheed Martin Corp., Aero & Naval Systems*, 116 F.3d 110, 113 (4th Cir. 1997). So long as the material requested "touches a matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant." *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Board*, 878 F.2d 875, 882 (5th Cir. 1989) (internal quotation marks omitted). "[W]here an agency is tasked with investigation," the courts must "defer to an agency's own appraisal of what is relevant so long as it is not obviously wrong." *Randstad*, 685 F.3 at 448 (quoting *EEOC v. Lockheed Martin,* 116 F.3d at 113*; FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992) (same).

Notably, Respondent has never raised an objection to the relevance of his testimony and documents to the Commission's inquiry. Pet. Exh. A, ¶¶ 9, 27. Indeed, the documents and testimony sought are plainly relevant to the Commission's investigation of possible FTC Act and TSR violations by CLF, and also to the determination of whether CLF is a "corporation" subject to the FTC's enforcement authority. Respondent has been a member of CLF's board since at least 2013, and can testify regarding the conduct and role of CLF's board in its operation for the last decade, including decisions made regarding executive and fundraiser compensation, and regarding budgeting and expenses toward CLF's charitable programs. *Id.* ¶ 7. Respondent's testimony and documents thus can inform the Commission's inquiry both as to whether CLF qualifies as "corporation" within the meaning of Section 4 of the FTC Act and about the truth of CLF's representations to donors as to the charitable purposes to which their donations would be put.

**D.    The CID is Not Unreasonably Broad or Burdensome.**

Respondent has failed to assert any basis why compliance with his CID is burdensome or any objection to the breadth of information sought. To the extent Respondent would attempt to do so now, he would fail to meet his burden to show the CID is unreasonable. *See United States v. Powell*, 379 U.S. 48, 58 (1964); *Maryland Cup Corp.*, 785 F.2d 471, 479 (4th Cir. 1986) (citing *FTC v. Texaco, Inc.*, 555 F.2d at 882). For one, Respondent's CID was crafted to minimize his burden in appearing for testimony. The Investigational Hearing is noticed to occur remotely via videoconference to eliminate any travel costs and reduce Respondent's overall time commitment. The Investigational Hearing can also be scheduled—as it originally was—based on Respondent's own availability. Moreover, to the extent Respondent has actually complied with

Page 14

his obligations to produce all documents responsive to the CID, Respondent's remaining burden to comply with his document requests would be limited to signing and returning a single Certification.

Respondent's burden to show that a duly-issued and served CID "is unduly burdensome is not easily met." *Maryland Cup Corp.*, 785 F.2d 477; *SEC v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973). The CID should be enforced absent a showing that providing the requested information and testimony is "unduly burdensome" in the light of Respondent's "normal operating costs", or would "threaten" or "seriously disrupt" Respondent's "normal business operations." *Maryland Cup Corp.*, 785 F.2d at 479; *Texaco, Inc.*, 555 F.2d at 882 (because "[s]ome burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest," courts "have refused to modify investigative subpoenas unless compliance threatens to unduly disrupt or seriously hinder normal operations of a business"). Here, enforcement of the CID mandates only that Respondent appear remotely for testimony on matters within his own knowledge, and provide a simple Certification to the Commission. Respondent's burden of compliance is both minimal and reasonable in relation to the Commission's investigation.

## E.    Respondent Waived Any Challenges to the CID by Failing to Avail Himself of Administrative Remedies.

Respondent did not petition to quash or limit his CID. Having failed to do so, Respondent may not now oppose the CID on grounds not presented to the Commission. *E.E.O.C. v. Cuzzens of Georgia, Inc.*, 608 F.2d 1062, 1063 (5th Cir. 1979) ("Generally, one who has neglected the exhaustion of available administrative remedies may not seek judicial relief."); *FTC v. XCast*

Page 15

*Labs, Inc.*, No. Misc 21-1026-MWFMRWX, 2021 WL 6297885, at *2, *3 (C.D. Cal. 2021) (noting that "[a]mple authority supports the conclusion that a party must present and exhaust" its objections to an FTC CID before coming to court) (citing cases); *McKart v. United States*, 395 U.S. 185, 193–94 (1969); *Morton Salt*, 338 U.S. at 653–54; *American Motors Corp. v. FTC*, 601 F.2d 1329, 1332–37 (6th Cir. 1979); *see also Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d 231, 245 (3d Cir. 1980) (litigant only excused from exhausting administrative remedies in cases where agency action is in "clear and unambiguous" violation of litigant's rights, the remedy cannot prevent irreparable injury, or exhaustion is futile).

As set forth above, the Commission's investigation is well within its statutory authority, and Respondent (as a mere witness) faces no injury that would excuse him from the requirement to exhaust administrative remedies. Nor can Respondent claim it would have been futile to avail himself of these administrative remedies, because Respondent did not bother to even communicate any objections to, or requests for, modification of the CID. Pet. Exh. 1, ¶¶ 9, 11, 26-27; *Clear Sky Car Wash, LLC v. City of Chesapeake*, 910 F. Supp. 2d 861, 882-83 (E.D. Va. 2012) ("Before a party is entitled to rely on the futility exception, it is required to make at least one good faith application under administrative procedures, unless a final agency decision establishes that even one application would be futile") (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 188-89 (1985)); *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454-55 (9th Cir. 1987)). Congress and the FTC have provided CID recipients with an administrative remedy to quash or narrow the request, *see* 15 U.S.C. § 57b-1(f); 16 C.F.R. § 2.10, and Respondent's election to ignore that remedy has waived the ability to present his objection now.

**F.      The CLF Declaratory Action Should Not Delay Enforcement of Respondent's CID.**

Respondent's only stated basis for refusing to comply with his CID is his desire to wait out the CLF Declaratory Action. But CLF's effort to derail the FTC's investigation through a pre-enforcement challenge to its CID should not impede prompt determination of this proceeding. CLF's pre-enforcement challenge is improper—as the FTC will demonstrate in its forthcoming motion to dismiss that case. *See* Pre-Motion Letter at 2. In fact, the present action—not CLF's suit—is the proper vehicle for judicial determination whether the CID to Respondent is properly issued and enforceable. *See Bell Atlantic Cash Balance Plan v. U.S. E.E.O.C.,* 976 F.Supp. 376, 381 n.10 (E.D.Va. 1997) ("It is well established that before an agency resorts to judicial enforcement of its own administrative subpoena, an anticipatory action by a party challenging the validity of the subpoena is not ripe; the subpoenaed party is not harmed by the absence of judicial review in this context since it has an adequate opportunity to object if, and when, the agency files an action to enforce its subpoena")(citations omitted); *Shea v. Office of Thrift Supervision*, 934 F.2d 41, 45 (3d Cir. 1991) ("Since agencies lack the power to enforce their own subpoenas, they must apply to the district courts for enforcement. Only then may substantive or procedural objections to the subpoena be raised for judicial determination.") (quoting 3 J. Stein, G. Mitchell and B. Mezines, Administrative Law § 21.01[1] at 21–4 (1985)); *Stryker Corp. v. DOJ*, No. 08-4111 (WJM), 2009 WL 424323, at *3 (D.N.J. 2009) ("Simply put, a judicial enforcement action filed by a government agency provides the sole opportunity for a subpoenaed party to raise objections to an administrative subpoena") (citing *Reisman v. Caplin*, 375 U.S. 440, 445 (1964)).

If allowed, Respondent's delay tactics may work real harm. The CLF Declaratory Action will likely not be resolved for many months (at the absolute earliest, after briefing of the Commission's motion to dismiss is completed in mid-November 2023), and any appeals could add more months or even years of delay. As Respondent's CID seeks testimony from a first-hand participant in CLF's operation, delay in his Investigational Hearing risks that Respondent's memories of relevant information will fade or that Respondent will become unavailable to testify.

To the extent Respondent seeks to rely on any of CLF's arguments in opposing his own CID, Respondent may raise those arguments here, to the extent that the Court deems the arguments not waived. Otherwise, the CLF Declaratory Action has no bearing on the instant proceedings, and any postponement only serves to jeopardize the evidence the CID seeks. The CID to Respondent should be enforced without delay.

## VI.    CONCLUSION

For the reasons stated above, the Court should issue the FTC's proposed order directing Respondent to fully comply with the CID, or show cause why the CID should not be enforced.

Respectfully submitted,

ADAIR F. BOROUGHS
United States Attorney
District of South Carolina

s/Stanley Ragsdale
Stanley D. Ragsdale (#3197)
Assistant U.S. Attorney
U.S. ATTORNEY'S OFFICE
1441 Main St., Suite 500
Columbia, SC 29201

Telephone: (803) 917-9943
Fax: (803) 254-2912
Stan.Ragsdale@usdoj.gov

ANISHA S. DASGUPTA
*General Counsel, Federal Trade Commission*
MICHELE ARINGTON
*Assistant General Counsel for Litigation, Federal Trade Commission*

M. Elizabeth Howe *(admission pro hac vice forthcoming)*
Colin D.A. MacDonald *(admission pro hac vice forthcoming)*
FEDERAL TRADE COMMISSION
Northwest Region
916 2nd Avenue, Suite 2896
Seattle, WA 98174
Telephone: (206) 220-6350
Fax: (206) 220-6366
mhowe@ftc.gov; cmacdonald@ftc.gov

*Attorneys for Petitioner*

September 13, 2023